IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| David Bacchus, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 6:09-1226-HMH-KFM |
| ) | |
| vs. ) | **REPORT OF MAGISTRATE JUDGE** |
| ) | |
| Major Dean, Associate Warden Bell, ) and Investigator Greer, ) | |
| ) | |
| Defendants. ) | |

This matter is before the court on the defendants' motion and supplemental motion for summary judgment (docs. 30, 77) and the plaintiff's motions for summary judgment (docs. 47, 68, 97).

The plaintiff, a state prisoner who is proceeding *pro se*, filed this action pursuant to Title 42, United States Code, Section 1983, claiming that his constitutional rights have been violated. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983.

On September 8, 2009, the defendants filed a motion for summary judgment (doc. 30). On September 9, 2009, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the summary judgment procedure and the possible consequences if he failed to respond adequately. On October 14, 2009, the plaintiff filed his own motion for summary judgment (doc. 47), which this court has also construed as an opposition to the defendants' motion for summary judgment. The defendants filed their response in opposition to the plaintiff's motion on November 2, 2009.

On March 1, 2010, the Honorable William M. Catoe, United States Magistrate Judge[1], issued a Report and Recommendation recommending that the defendants' summary

---

[1] Judge Catoe retired May 31, 2010.

judgment motion be granted. On March 17, 2010, the Honorable Henry M. Herlong, Jr., Senior United States District Judge, declined to adopt the Report and Recommendation and remanded the matter for consideration of an allegation regarding loss of good time credits that the plaintiff raised for the first time in his objections to the Report and Recommendation. On March 18, 2010, Judge Catoe directed the defendants to file within 50 days a supplemental answer, return, or other response to the additional ground raised by the plaintiff concerning the alleged loss of good time credits. Judge Catoe further noted in the Order that any dispositive motions regarding the new allegation should be filed no later than 45 days after the supplemental answer.

On March 30, 2010, the plaintiff filed his second motion for summary judgment (doc. 68). The defendants filed opposition to the plaintiff's motion for summary judgment on May 14, 2010. The defendants also filed a supplemental motion for summary judgment addressing the good time credits issue on May 14, 2010 (doc. 77). Another *Roseboro* order was issued on May 17, 2010. The plaintiff did not file a timely response to the defendants' supplemental motion. The case was reassigned to the undersigned upon Judge Catoe's retirement. On June 11, 2010, the plaintiff moved for an extension of time to respond to the defendants' supplemental motion for summary judgment. This court granted the motion and extended the response time until July 12, 2010. On June 21, 2010, the plaintiff filed his opposition to the defendants' supplemental motion, which has also been construed as the plaintiff's third motion for summary judgment (doc. 97). The defendants filed their opposition to the plaintiff's motion on July 2, 2010.

**FACTS PRESENTED**

The plaintiff is serving an 18-year sentence for voluntary manslaughter, grand larceny, failure to stop for an officer, and resisting arrest (def. m.s.j., doc. 30, ex. A). He is

2

currently serving his term at Broad River Correctional Institution. He was previously incarcerated at Lee Correctional Institution.

On December 2, 2008, an inmate was stabbed on the east yard at Lee (def. m.s.j., ex. B). According to information gathered from inmates, the plaintiff was involved in the stabbing (*id.*). On December 9, 2008, the plaintiff was placed into administrative segregation in the Special Management Unit ("SMU") to protect the integrity of the investigation (*id.*). The incident report is signed by Captain Robert Johnson and defendant Associate Warden Bell (*id.*).

On February 17, 2009, the plaintiff submitted a grievance complaining that he was housed in the SMU longer than allowed by policy (*id.*, ex. D). According to the defendants, the grievance was unprocessed because the plaintiff failed to submit a "request to staff" form to his SMU caseworker before filing the grievance in an effort to achieve an informal resolution (*id.*, ex. D, E). However, in support of his own motion for summary judgment, the plaintiff submitted copies of three request to staff forms dated January 7, 12, and 13, 2009, and addressed to his caseworker, to defendant Associate Warden Bell, and to Bruce Oberman, in which he made the same complaints. The plaintiff received a response from his caseworker on January 9, 2009, and a response from Mr. Oberman on January 17, 2009. The plaintiff's caseworker told the plaintiff that he needed to send a request to staff form to defendant Investigator Greer of the South Carolina Department of Corrections ("SCDC") Office of Investigation . The plaintiff received a response from defendant Associate Warden Bell on March 18, 2009, noting that the plaintiff was "currently pending a major conviction for exhibitionism" (pl. 1st m.s.j., doc. 47, ex. A). Indeed, the plaintiff's disciplinary conviction record submitted by the defendants reveals that the plaintiff was convicted of this offense in March 2009, while still housed in the SMU (def. m.s.j., ex. A*)*. Defendant Investigator Greer wrote the plaintiff on April 22, 2009, stating that he did not place the plaintiff in the SMU, and he did not know why the plaintiff was there. He suggested that the

3

plaintiff contact Mr. Oberman or Associate Warden Bell "for a better clarification of [his] status" (pl. 1st m.s.j., ex. E).

On April 24, 2009, the plaintiff submitted a grievance complaining that he was being held in lockup longer than 30 days (def. m.s.j., ex. F). As of the date of the filing of the defendants' motion for summary judgment, the grievance was still pending (*id.*, ex. E).

On April 27, 2009, the plaintiff was scheduled to return to the general prison population (*id.*, ex. C, Bell aff. ¶ 5). However, the plaintiff refused to leave the SMU, and he received a disciplinary conviction for the refusal (*id.*). The plaintiff was returned to the general population on May 19, 2009 (*see* pl. 1st m.s.j. at 3; def. m.s.j., ex. B). Shortly after rejoining the general population, the plaintiff received a disciplinary conviction for assault and battery of a correctional officer, his ninth major disciplinary conviction since 2007 (def. m.s.j., ex. A).

The plaintiff commenced this action on May 13, 2009, six days prior to his rejoining the general prison population. He claims that the defendants placed him and conspired to place him in the SMU without disciplinary charges and without a hearing, and failed to prevent the violation of his civil rights. He raises claims under 42 U.S.C. §§ 1983, 1985, and 1986, and a claim for gross negligence.

## **APPLICABLE LAW AND ANALYSIS**

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to summary judgment as a matter of law. As to the first of these determinations, a fact

4

is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds,* 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248. Accordingly, when Rule 56(e) has shifted the burden of proof to the non-movant, he must provide existence of every element essential to his action which he bears the burden of adducing at a trial on the merits.

**Exhaustion of Administrative Remedies**

The defendants first argue that the plaintiff has failed to exhaust his administrative remedies because he has not filed a "Step Two" grievance, as set forth in

5

SCDC's grievance procedure. However, while it does not appear that the plaintiff filed a Step Two grievance with regard to his allegations in this case, there is some evidence that the plaintiff has attempted to comply with the SCDC's grievance procedures. Accordingly, this court does not recommend dismissal on that basis and will consider the plaintiff's claims on the merits. *See Bacon v. Greene*, C.A. No. 08-7358, 2009 WL 794939, at *1 (4th Cir. 2009) (finding that an inmate suit cannot be dismissed for lack of exhaustion where there is a genuine issue as to whether the prison officials made exhaustion impossible).

**<u>Due Process Allegations</u>**

The plaintiff alleges in his complaint that he was placed in Lee's SMU in violation of SCDC policies and procedures and his rights under the due process clause. "In order to prevail on either a procedural or substantive due process claim, inmates must first demonstrate that they were deprived of 'life, liberty, or property' by governmental action." *Beverati v. Smith*, 120 F.3d 500, 502 (4th Cir. 1997). An institution must provide procedural due process before transferring an inmate to an administrative segregation unit only when "confinement in the administrative segregation unit impose[s] such an atypical hardship on [the inmate] vis a vis ordinary prison life, that they possess[] a liberty interest in avoiding it." *Id.* at 502-503 (citing *Sandin v. Conner*, 515 U.S. 472, 479-81 (1995)).

The plaintiff has presented evidence by affidavits of other prisoners that the conditions of the SMU differ from the conditions in general population in the following ways: (1) inmates in the SMU get three showers per week rather than every day as in general population; (2) inmates in the SMU are limited to three copies of legal cases or books for research, while general population inmates may access numerous law books for two hours twice a week; (3) inmates in the SMU may only possess one religious book while general population inmates may possess up to ten books and are allowed to attend worship services; (4) inmates in the SMU are only allowed out of their cells for one hour of recreation two to three times a week while general population inmates are allowed five hours of recreation

6

seven days a week; (5) inmates in the SMU cannot clean their cells as often as inmates in general population; (6) inmates in the SMU cannot receive pictures through the mail while general population inmates can receive ten pictures at a time in the mail; (7) inmates in the SMU cannot purchase canteen items and hygiene products; and (8) inmates in the SMU are only allowed to use the phone once per month, while general population inmates may use the phone seven days a week (pl. 1st m.s.j., affidavits at docs. 50, 55, 56).

According to the affidavit of Associate Warden Bell, the conditions experienced by the plaintiff in the SMU are similar to the conditions experienced by the general population (Bell aff. ¶ 3). Inmates in the SMU are provided recreational opportunities, regular meals, showers, and access to medical facilities (*id.*). In addition, the sanitation of the cells in the SMU are the same as the cells in the general population (*id.*). In fact, as noted above, the plaintiff was scheduled to return to the general population on April 27, 2009, but he refused to leave the SMU, and he received a disciplinary conviction for the refusal (*id.* ¶ 5).

In *Beverati v. Smith*, 120 F.3d 500, 502 (4th Cir. 1997), inmates alleged that they were transferred to the administrative segregation unit without due process. The Fourth Circuit Court of Appeals assumed the following conditions in the administrative segregation unit were present:

> Inmates . . . have submitted affidavits attesting that the actual conditions in administrate segregation are more onerous than those specified in the prison regulations. They claim that . . . their cells [in administrative segregation] were infested with vermin; smeared with human feces and urine; flooded with water from a leak in the toilet on the floor above. And, they assert, they were forced to use their clothing and shampoo to clean their cells. In addition, Inmates maintain that their cells were unbearably hot and that the food they received was cold. Furthermore, [an inmate] submitted an affidavit indicating that those assigned to administrative segregation did not receive clean clothing, linen, or bedding as often as required by the regulations governing administrative segregation; that they were permitted to leave their cells three to four times per week, rather than seven, and that no outside recreation was permitted; that there were no education or religious services available; and that food was served in considerably smaller portions.

7

*Id.* at 504. The court concluded "that although the conditions were more burdensome than those imposed on the general prison population, they were not so atypical that exposure to them for six months imposed a significant hardship in relation to the ordinary incidents of prison life." *Id.* Thus, the Fourth Circuit Court of Appeals held that the conditions did not implicate a liberty interest, and "because [the inmates] possessed no liberty interest in avoiding confinement in administrative segregation, the district court properly granted summary judgment in favor of prison officials on Inmates' procedural and substantive due process claims." *Id.*

Viewing the evidence in a light most favorable to the plaintiff, while the conditions the plaintiff faced in the SMU may have been more burdensome than those imposed on the general prison population, they "were not so atypical that exposure to them for six months imposed a significant hardship in relation to the ordinary incidents of prison life." *See id.* Accordingly, the conditions do not implicate a liberty interest, and summary judgment should be granted for the defendants on the plaintiff's due process claims.

The plaintiff also alleges that he was placed in Lee's SMU in violation of SCDC policies and procedures. In *Sandin v. Connor*, the United States Supreme Court determined that "the search for a negative implication from mandatory language in prisoner regulations has strayed from the real concerns undergirding the liberty protected by the Due Process Clause." 515 U.S. at 483. The Court went on to find that liberty interests protected by the Due Process Clause "will be generally limited to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484. As discussed above, the plaintiff's allegations do not rise to the level of a constitutional violation. Thus, the plaintiff's allegations that the defendants violated their own policy or procedure, standing alone, do not amount to constitutional violations. *See United States v. Caceres*, 440 U.S. 741, 755-57 (1978). *See also Williams v. Jackson*, C.A. No. 8:07-3661-CMC-BHH, 2009 WL 363450, at *6 (D.S.C. 2009) ("[T]he violation of disciplinary procedure

8

rules by a prison does not constitute a violation of due process.") (citing *Sandin*, 515 U.S. at 483). Accordingly, the plaintiff's argument is without merit.

**Good Time Credits**

In his objections to Judge Catoe's Report and Recommendation, the plaintiff alleged for the first time that the defendants violated his procedural due process rights by transferring him to the SMU without a disciplinary hearing resulting in the loss of good time credits. In *Wolff v. McDonnell*, 418 U.S. 539 (1974), the United States Supreme Court held that a prisoner's accumulation of good time credits, which can affect the length of his incarceration, may give rise to a constitutionally protected liberty interest. *See Hinton v. Sutton*, C.A. No. 93-7233, 1994 WL 52189, at *1 (4th Cir. 1994) (citing *Wolff*, 418 U.S. at 563-66) ("When loss of good-time credits or solitary confinement is at issue, the United States Supreme Court has mandated the following procedural safeguards: (1) advance written notice of charges; (2) written findings; and, generally, (3) the right to call witnesses."). Courts in this district have stated that "[a]lthough a prisoner may have due process rights as to good-time credits that are taken away from him, the opportunity to earn future good time credits at a given rate is not a constitutionally established liberty interest." *Wiggins v. Bush*, C.A. No. 3:08-3452-RBH, 2010 WL 1254878, at *3 (citing *Wolff*, 418 U.S. 539 and *Furtick v. SCDC*, 649 S.E.2d 35, 38 (S.C. 2007)). *See also Pierre v. Ozmint*, C.A. No. 3:09-226-CMC-JRM, 2010 WL 67996, at *3 n.4 (D.S.C. 2010) (citing *Wolff*, 418 U.S. at 557).

In support of their supplemental motion for summary judgment, the defendants submitted the affidavit of Michael J. Stobbe, the Branch Chief of the Inmate Records Office for the SCDC. Mr. Stobbe testified that the plaintiff neither lost nor failed to earn good time credits based upon his December 2008 transfer to the SMU. Further, at the time he was transferred to the SMU in December 2008, the plaintiff was not earning work credits or education credits, and had not earned these credits since 2007. Thus, according to Mr. Stobbe's testimony, the

9

plaintiff neither lost nor failed to earn work or education credits based upon his transfer to the SMU (def. supp. m.s.j., doc. 77, ex. G, Stobbe aff. ¶¶ 2-3).

In support of his opposition to the defendants' supplemental motion, the plaintiff submitted his own affidavit in which he testified in pertinent part:

> [O]n or about April or May of 2008, Plaintiff had a yearly annual review. During the review, I was told if I obtain a job, I will be able to earn work credits and good-time credits.
>
> In Aug. 2008, case worker Andrew L. Tedder helped Plaintiff get a dorm worker job in Chesterfield Unit. Being a dorm worker, Plaintiff now earned work credits and good time credits.
>
> Plaintiff maintained the dorm worker job til I was placed on SMU pending investigation on Dec. 9, 2008. . . .

(Pl. 3rd m.s.j., doc. 97, ex. J, aff. ¶¶2-4).

In opposition to the plaintiff's third motion for summary judgment, the defendants again submitted the affidavit of Mr. Stobbe in which he testified that the plaintiff did not lose nor fail to earn good time credits, work credits, or education credits based on his placement in the SMU (def. resp. to pl. 3rd m.s.j., doc. 100, ex. G). In addition, the defendants submitted the plaintiff's Education and Work Credit History, which shows that the plaintiff has not earned these credits since 2007 (*id.*, ex. H). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). No genuine issue of material fact exists to dispute that the transfer of the plaintiff to Lee's SMU did not cause him to either lose or fail to earn good time credits, work credits, or education credits. Accordingly, the plaintiff's claim fails.

**Plaintiff's Additional Claims**

The plaintiff's claim under 42 U.S.C. § 1985 also fails. A plaintiff raising a claim for "conspiracy to deny equal protection of the laws "under 42 U.S.C. § 1985 must, to

10

withstand a motion for summary judgment, present concrete supporting facts showing racial animus and an agreement or a "meeting of the minds" by defendants to violate the claimant's constitutional rights. *Simmons v. Poe*, 47 F.3d 1370, 1376 (4th Cir. 1995). The plaintiff is unable to present any evidence of racial animus and a conspiracy. The plaintiff's claim under 42 U.S.C. § 1986 (action for neglect to prevent violation of Section 1985) fails for the same reasons.

The plaintiff also alleges a claim for gross negligence. However, he has produced absolutely no evidence in support of this claim. Conclusory allegations, without more, are insufficient to preclude the granting of a summary judgment motion. *Ross,* 759 F.2d at 365. Accordingly, the claim fails.

To the extent the plaintiff has alleged a claim under the Eighth Amendment for "cruel and unusual punishment" because of the conditions to which he was exposed in the SMU, such claim also fails. To succeed on any Eighth Amendment claim regarding conditions of confinement, a prisoner must prove: (1) objectively, the deprivation of a basic human need was sufficiently serious, and (2) subjectively, the prison officials acted with a "sufficiently culpable state of mind." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991); *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996). The plaintiff has made no such showing here.

**Qualified Immunity**

The defendants also contend that they are entitled to qualified immunity in their individual capacities. This court agrees. Qualified immunity protects government officials performing discretionary functions from civil damage suits as long as the conduct in question does not "violate clearly established rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). This qualified immunity is lost if an official violates a constitutional or statutory right of the plaintiff that was clearly established at the time of the alleged violation so that an objectively reasonable official in the defendants' position would have known of it. *Id.* In addressing qualified immunity, the United States Supreme

11

Court has held that "a court must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all and, if so, proceed to determine whether that right was clearly established at the time of the alleged violation." *Wilson v. Layne*, 526 U.S. 603, 609 (1999); *see also Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685 (4th Cir. 2000). Further, the Supreme Court held that "[d]eciding the constitutional question before addressing the qualified immunity question also promotes clarity in the legal standards for official conduct, to the benefit of both the officers and the general public." *Wilson*, 526 U.S. at 609. If the court first determines that no right has been violated, the inquiry ends there "because government officials cannot have known of a right that does not exist." *Porterfield v. Lott*, 156 F.3d 563, 567 (4th Cir. 1998). As discussed above, the plaintiff has failed to show that the individual defendants violated his constitutional rights. Therefore, the defendants are entitled to qualified immunity.

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, it is recommended that the defendants' motion and supplemental motion for summary judgment (docs. 30, 77) be granted and the plaintiff's motions for summary judgment (docs. 47, 68, 97) be denied.

July 8, 2010                                              s/Kevin F. McDonald
Greenville, South Carolina                    United States Magistrate Judge